UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| VICKIE L. KIDWELL, | ) No. CV 12-08822-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred when he

|   |   |   |
|---|---|---|
| 1 |   | did not find Plaintiff's obesity, depression, anxiety, bilateral carpal tunnel syndrom and migraine headaches to be severe medically determinable impairments; |
| 4 | 2. | Whether the ALJ properly assessed Plaintiff's fibromyalgia; and |
| 6 | 3. | Whether the ALJ properly assessed Plaintiff's credibility. |

(JS at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the Decision of the Commissioner must be reversed and the matter remanded for calculation of benefits.

**<u>INTRODUCTION</u>**

Plaintiff's Title II disability application was originally filed on November 7, 2000, and alleged an onset date of June 10, 2000 due to "chronic fatigue syndrome." (AR 94-96, 109.) This application has resulted in four hearings before two ALJs, two grants of Plaintiff's Requests for Review by the Appeals Council, and two Opinions by this Court, both of which reversed the Decisions of the Commissioner and remanded the matter for new hearings. Despite these attempts at guidance by both the Appeals Council and this Court, and despite the assignment of a new ALJ to the matter, basically the same errors have been repeated for over a decade. For the reasons to be set forth herein, the Decision of the Commissioner is reversed, and the matter will be remanded for calculation of benefits.

//

**I**

**THE ALJ FAILED TO PROPERLY ASSESS PLAINTIFF'S FIBROMYALGIA**

The current ALJ Decision, dated March 31, 2011 (AR 510-521) does find that Plaintiff suffers from severe impairments which include fibromyalgia, diabetes, and a history of spine and right shoulder surgeries. (AR 51.)  Nevertheless, when the Decision is read carefully, it is apparent that the ALJ either did not really believe that Plaintiff suffers from fibromyalgia, or, believed that Plaintiff did not have any disabling effects from this disease.

In its second Opinion in this case, issued on October 25, 2007 (AR 529-526), the Court indicated its concern with the "relative dearth of analysis in this record concerning Plaintiff's CFS [fibromyalgia], and in particular, whether and to what extent it impacts her residual functional capacity ('RFC')." (AR 534.)  The Court further indicated that it would be necessity on remand to obtain an objective report by a rheumatologist as to the effect of her fibromyalgia on Plaintiff's RFC, "including the non-exertional components (pain and fatigue) which must be evaluated on remand." (AR 535.)  Despite this painstakingly clear directive, the ALJ failed to obtain a consultative examination ("CE") from a rheumatologist the third time around, instead obtaining an Internal Medicine CE.  The Appeals Council reversed and directed the ALJ to obtain a rheumatological CE (AR 787), which was finally conducted on December 13, 2010 by Dr. Zamiri. (AR 879-883.)

After conducting an examination, Dr. Zamiri diagnosed Plaintiff as suffering from chronic pain syndrome, fibromyalgia, osteoarthritis, degenerative disc disease of the lumbar and cervical spine, and a history of irritable bowel syndrom, hyperthyroidism, anxiety,

3

diabetes, and hyperlipidemia. (AR 880.) In rendering a functional assessment, Dr. Zamiri noted, in pertinent part, that:

> "The patient is a 56-year-old female with chronic pain associated to her back problem who is now receiving high dose narcotic pain medication and claims to continus [sic] to have pain. Although she has characteristics of fibromyalgia, her diffuse pain is not explained only by fibromyalgia. For further evaluation of disability, I recommend being evaluated by a pain management group or an orthopedic surgeon. From the standpoint of fibromyalgia, however, I have provided my answers to the questionnaires below."

(Id.)

With regard to the referenced questionnaire, this is a Social Security Administration ("SSA") form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." In it, Dr. Zamiri rendered the following opinions as to exertional and non-exertional restrictions:

> Occasional ability to lift up to ten pounds, no ability to lift more;
> Ability to carry up to ten pounds, never more;
> Ability to sit two hours at one time without interruption, stand for 30 minutes, and walk for 15 minutes. In an eight-hour day, ability to sit for six hours, stand for one hour, and walk for one hour;
> Requirement of a cane to ambulate more than five feet as a medical necessity;

4

```
 1              No ability to ambulate without using a wheelchair,
 2         walker, or two canes or two crutches; or to walk a block at
 3         a reasonable pace on rough or uneven surfaces; or to climb
 4         a few steps at a reasonable pace with the use of a single
 5         handrail;
 6              Problems with balance.
 7  (AR 881-883.)
```

In rendering his Decision, the ALJ determined that Plaintiff has the RFC to perform light work, with certain occasional exertional limitations, and no non-exertional limitations. (AR 514.)  He thus rejected Dr. Zamiri's central conclusion that Plaintiff would be capable of no more than sedentary exertion. (AR 517.) Despite finding that Plaintiff has fibromyalgia as a severe impairment, the ALJ concluded that there was no deleterious effect from this disease, finding that Plaintiff has been treated only on a conservative basis for various "subjective symptoms" related to fibromyalgia, and that there have been "few, if any, supporting objective findings to account for these symptoms." (AR 518.)  Without belaboring the point, this is basically a reiteration of what two ALJs have mistakenly concluded regarding Plaintiff's condition in four Decisions over a decade-long period despite objective support documenting that condition, and a treatment regimen which has been administered to Plaintiff, to which she has adhered scrupulously.

Plaintiff has consistently been diagnosed as suffering from chronic fatigue syndrome, sometimes designated as fibromyalgia or arthralgia. (AR 199, 209, 424, 427, 577, 583, 660.)  These diagnoses have been based upon accepted diagnostic methods.  Indeed, as this

Court previously pointed out, SSA has promulgated Social Security Ruling ("SSR") 99-2p as a methodology to evaluate cases involving chronic fatigue syndrome. Subsequently, SSR 12-2p has been provided to assist in a determination of evaluation of fibromyalgia and to provide guidance in evaluation of disability claims involving these conditions. In 2004, the Ninth Circuit discussed fibromyalgia as having an unknown cause, without cure, and as a disease which is diagnosed on the basis of patients' reports of pain and other symptoms. See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004).

Both SSR 99-2p and 12-2p provide a description of the requisite medical signs and laboratory findings which must be present to establish the existence of this disease. These include "persistent, reproduceable muscle tenderness on repeated examinations, including the presence of positive tender points; ..." Looking back to the report of rheumatologist Dr. Sussman in December 2000, there is consistent documentation of widespread muscle and joint pain (AR 568, 577, 579, 588); however, even in the latest ALJ Decision, the interpretation given to Dr. Sussman's report is that "there were no significant objective medical findings which definitively diagnosed her condition." (AR 515.)

The guidance provided by SSR 12-2p, post-dated the latest ALJ Decision, but did not materially change the analysis. It provides that fibromyalgia may be determined as a medically determinable impairment if there is a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, and evidence of other disorders that could have caused the repeated manifestation of symptoms, signs or co-occurring conditions are excluded. In Plaintiff's case, there is not just ample but consistent and

6

substantial evidence as to all of these factors. Going back as far as 2000, Plaintiff has complained of widespread body pain. (AR 162, 387, 440, 568, 577, 583, 586, 589, 658, 661, 819.) Next, Plaintiff's records indicate persistent fatigue (AR 568, 577, 588, 589, 593, 702); depression (AR 427, 440, 577, 635); anxiety (AR 430, 432, 436, 576-77); irritable bowel syndrome (AR 436, 441, 584, 753-54); headaches (AR 429, 432, 572, 734); and dizziness (AR 583, 585, 615-17). All of these impairments are identified as symptoms of fibromyalgia by SSR 12-2p. In May 2008, a medical examination documented 16 out of 18 tender points. In August 2009, 11 out of 18 tender points were found (AR 812), and in December 2010, 14 of 18 trigger points were located (AR 880). Thus, Plaintiff's objective examinations meet the requirements of the American College of Rheumatology which requires at least 11 positive tender points upon examination to satisfy a diagnosis of fibromyalgia. (SSR 12-2p.)

Moreover, as to the question of whether other disorders could have caused these repeated manifestations of symptoms, it appears not. X-rays of Plaintiff's lumbar spine revealed only mild degeneration (AR 403), and x-rays of the cervical spine showed, again, only minimal degenerative changes. (AR 709.) There is no other medical explanation for Plaintiff's lightheadedness and fatigue. (AR 617-618.)

The ALJ essentially rejected all of Plaintiff's treating source medical opinions as being unsupported by objective evidence. As the Court has indicated, this is an erroneous finding with regard to Dr. Sussman. Similarly, the ALJ improperly rejected the opinions of Plaintiff's primary care physician, Dr. Tanedo, who opined as to Plaintiff's migraine headaches, muscle pain, bone pain, abdominal cramping, and diabetes. (AR 596.) The ALJ incorrectly determined that

7

Dr. Tanedo's opinions were based on Plaintiff's subjective complaints, not objective findings. (AR 516.) The Court finds that the ALJ failed to articulate specific and legitimate reasons to reject the opinions of these treating physicians, in violation of the clear direction provided by the Ninth Circuit in its decisions. See Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995). The Court further finds that while the ALJ is charged with evaluating competing medical opinions, there is no legitimate basis for him to have relied upon the one-time examination of internal medicine examiner Dr. Singh in May 2008. (AR 519.) This was a brief examination which, in any event, resulted in Dr. Singh's confirmation of the diagnosis of fibromyalgia based on notation of 16 out of 18 tender points. (AR 602.)

As to Dr. Zamiri, while the ALJ's Decision referenced his report (AR 517), it failed to indicate what weight (if any) might have been given to Dr. Zamiri's findings. Certainly the confirmation of the existence of pain and fatigue based on examination is critical with regard to possible non-exertional limitations in determining an individual's RFC. Dr. Zamiri in fact did confirm the existence of chronic pain and noted also that Plaintiff's current medications included very serious pain relief formulas, including Vicodin and morphine. (AR 879.) The record further indicates that even before the date last insured, Plaintiff was consistently taking pain reduction medications; thus, the Court finds it difficult, at the least, to understand the ALJ's rejection of the effect of Plaintiff's fibromyalgia based on his conclusion that Plaintiff had only been prescribed conservative measures to treat her condition.

The almost total misanalysis of the effect of Plaintiff's fibromyalgia on her exertional and non-exertional abilities, and the

fact that the Commissioner has had four opportunities to make a proper evaluation, are enough to reverse and remand for benefits. In 2009, Medical Expert ("ME") Dr. Alpern testified that if all of Plaintiff's subjective testimony was accepted, and including the medical diagnoses in the record, Plaintiff "would not be able to work a full workday." (AR 487.) It is the Court's conclusion that Plaintiff's testimony is credible and is consistent with the medical diagnoses in the record. Consequently, she is disabled. Thus, the Court will only briefly touch upon the remaining issues, which concern the lack of finding of certain impairments as severe, and asserted error in the credibility analysis.

Turning first to the credibility analysis, the ALJ again relied largely upon a supposed lack of objective evidence to reject Plaintiff's consistent complaints of pain. (AR 518.) Plaintiff did not blanketly complain of unrelenting pain. For example, she testified she had surgery on both wrists for tendinitis, and that the pain improved after that surgery, but she still experienced weakness in her hands. (AR 49.) Indeed, Plaintiff's testimony at her hearings was very detailed, and very much to the point, and was consistent with the reports of her treating physicians. There is an absence of clear and convincing evidence to support the rejection by the ALJ of Plaintiff's pain complaints.

With regard to the omission of certain impairments as severe, the Court need not address that issue, since it would only be relevant if this matter were to be remanded for a new hearing.

//
//
//

On the basis of the foregoing, the Decision of the Commissioner is reversed, and this matter will be remanded for calculation of benefits.

**IT IS SO ORDERED.**

DATED: August 21, 2013            /s/
                                  VICTOR B. KENTON
                                  UNITED STATES MAGISTRATE JUDGE